## Moretti's Estate

The facts appear from the readjudication of

SINKLER, J., Auditing Judge.—By adjudication of my predecessor, Thompson, J., the balance for distribution was awarded to Elisabetta Falasca, the mother of the decedent, to be paid to Mario Orsini Ratto, Royal Italian Consul General at Philadelphia, for transmission to her in Italy.

On May 17, 1931, a petition to open the adjudication due to alleged erroneous statements of fact was filed, reciting that when the fund was forwarded to Italy the court there found that the deceased had a natural son named Pietro Moretti, and the court to which the money was forwarded refused to pay the money to Mrs. Falasca (mother of decedent) and returned the money to the Italian consul in Philadelphia.

On April 17, 1931, a decree was entered by Henderson, J., granting the prayer of the petition and ordering that the adjudication of Thompson, J., above referred to, be opened for the purpose of review.

The account came before me for audit on September 21 and 23 and December 9, 1931. On December 9, 1931, the testimony of two witnesses was heard in an effort to establish the domicile of the decedent. No evidence seems to be available to establish his domicile. Since he has resided for eight years in Philadelphia, his estate is to be distributed according to the laws of Pennsylvania.

Subsequently, a brief of argument was submitted to me by Mr. Maxman, of counsel for the accountant. The labors of counsel have considerably lightened those of the court. The following facts appear:

The decedent was the illegitimate son of Elisabetta Falasca and Pietro Moretti. The father recognized the decedent under the Italian law as his son. The mother of the decedent, Elisabetta Falasca, deserted him immediately after she had finished nursing him, and the decedent was reared and educated by Innocenza Mariani, who became the wife of the decedent's father.

In 1920 the decedent had illicit relations with Rose Di Felice, as a result of which an illegitimate child was born, whom the decedent named Pietro Moretti. The decedent then came to America, and continued to reside here until his death, March 17, 1928.

There has been filed with me a certificate of the birth of Pietro Moretti on October 27, 1920, the son of Filiberto Moretti and Rose De Felice. There has also been filed with me an authenticated copy of the document and a translation thereof from the Italian language, the document being headed "Acknowledgment of Natural Son made by Filiberto Moretti." This acknowledgment was made by virtue of a letter of attorney made by the decedent, Filiberto Moretti, appointing Innocenza Mariani his special attorney. The effect of this acknowledgment under the laws of Italy is to constitute the bastard son, Pietro Moretti, the legitimate son of Filiberto Moretti, the decedent, and capable of inheriting from him.

A certificate of Armando Salati, an attorney at law, duly recognized and authorized under the laws of the Kingdom of Italy, has been filed with me, certifying that the legal effect of the recognition, legitimation or legalization by a father of his illegitimate son under the laws of Italy, is to give the child the right to share in the estate of his father. Attached to this certificate is a certification of Marquis A. Ferrante, Royal Italian Consul General for the port of Philadelphia, to the effect that the certificate of Armando Salati is true and correct.

The question is whether this court should give effect to the legitimation under the laws of Italy, which was accomplished by a method not prescribed by the laws of this state.

The brief of counsel for the accountant refers to Smith *v*. Derr's Admin'rs, 34 Pa. 126. It was there held that a child born out of wedlock and rendered legitimate according to the laws of the State of Tennessee was not thereby rendered capable of inheriting land in Pennsylvania. The decision of the court in this case followed Doe *v*. Vardill, 5 B. & C. 438. In that case an illegitimate child was born in Scotland, and became legitimate according to the laws of Scotland by the subsequent marriage of the parents. The question involved was whether this child was capable of inheriting real estate in Great Britain. The decision of the court was to the effect that the law of the domicile controlled the distribution of the personal estate, but that the right to inherit land in England must be determined according to the laws of that country. It may be observed the decision of the Supreme Court in Smith *v*. Derr's Admin'rs, supra, was rendered in 1859, and the cause of action arose before the Act of 1857. By the provisions of this act, the subsequent marriage of the parents of an illegitimate child had the effect of rendering the child legitimate and capable of inheritance.

The lot of the bastard at common law was a hard one. He was considered filius nullius or filius populi. He was not even entitled to name unless he gained one by reputation. He was incapable of holy orders and could hold no dignity in the church. The tendency of courts in recent years and of legislation has been more merciful. In Pennsylvania, the Act of 1857 provided that the marriage of the parents of an illegitimate child after his birth renders him a legitimate child. By the earlier Act of 1855, an illegitimate child and its mother were given the right to inherit from each other, and by later legislation the illegitimate child was entitled to inherit from his mother and from his maternal grandparents.

It appears that the more enlightened view at present is in favor of recognizing the legitimation of a bastard child according to the laws of another state or another country having jurisdiction of the child. For example, in England it was held that a child born before wedlock of parents who were at her birth domiciled in Holland, but who was legitimated according to the laws of Holland by the subsequent marriage of the parents, was entitled to a share in the personal estate of an intestate dying domiciled in England as one of her next of kin under the English statute of distribution: In re Goodman's Trusts, 17 Ch. D. 266.

Story, in his Conflict of Laws, page 173, says:

"As to issue born before the marriage, if, by the law of the country where they are born, they would be legitimated by the subsequent marriage of their parents, they will by such subsequent marriage (perhaps in any country but at all events in the same country) becomes legitimate, so that this character of legitimacy will be recognized in every other country. If illegitimate there, the same character will belong to them in every other country."

There is, apparently, no reported decision by any court of this state which recognizes as valid the legitimation of a bastard by method prescribed in another state, or in a foreign country, if such method does not exist in this state. Smith v. Derr's Admin'rs, supra, has not been overruled, but by reason of the lapse of time and consequent change in the policy of the law generally need not be regarded as authority at the present time and in the instant case. The more sound reasoning and the weight of authority determine that the status of a child as legitimate or bastard when fixed by the proper law is to be recognized in other jurisdictions for the purpose of the descent of real property and the distribution of personal property.

The balance for distribution is awarded to the son of decedent, who is the next of kin under the law of this state, the domicile of decedent, and by reason of the status of the child being established under the laws of Italy as a legitimate child.

Counsel for the Italian consul informed us that the mother of the decedent has been notified of the opening of the adjudication and reaudit for the purpose of praying that the estate be awarded to the decedent's son, but she has taken no action. The question involved is important, and the Italian consul is directed to engage other counsel to file exceptions to this adjudication in her behalf.

C. James Todaro, for exceptant; Di Silvestro & Maxman, contra.

GEST, J., May 27, 1932.—Filiberto Moretti, an Italian by birth, came to Philadelphia and lived here for a period of at least eight years until his death, unmarried and intestate, on March 17, 1928. Letters of administration were granted on March 29, 1928, to Michele Macchiaroli at the request of the Royal Minister Plenipotentiary of Italy in charge of the Consulate General of Italy at Philadelphia. It may be noted that in this renunciation the decedent is described as an Italian citizen, whereas, in the petition for letters of administration, Macchiaroli stated that the decedent was a citizen of the United States and a resident of Philadelphia County, Pennsylvania, and the letters granted were in form original and not ancillary. This, however, does not seem to us to be material as affecting our decision of the case.

At the first audit of the administrator's account, on September 16, 1929, it was stated in the petition for distribution that the sole heir and next of kin of the decedent was his mother, Elisabetta Falasca, residing in Italy, and the auditing judge awarded the balance for distribution to her, to be paid to the Royal Italian Consul General for transmission to her in Italy. When, however, the fund had been so transmitted to Italy, the court to which it was sent found that the decedent had a minor natural son, Pietro Moretti, refused to pay the money to the mother, and returned it to the Royal Italian Consul General here. Upon this, the administrator presented his petition to open the adjudication in order that the fund might be awarded to Pietro, who, it was claimed, was entitled under the law of Italy to the estate of his father by virtue of certain legal proceedings which will be related hereafter. And the Royal Italian Consul having joined in the petition, the adjudication was opened for the purpose of review.

The testimony produced at the reaudit was in some respects rather meagre, but the facts appear to be substantially as follows: The decedent was the illegitimate son of Elisabetta Falasca and Pietro Moretti, and was recognized by the latter as his son under the Italian law. Elisabetta Falasca, the mother of the decedent, soon deserted him, and the decedent was reared by his father and Innocenza Mariani, whom his father married.

On October 27, 1920, the decedent had an illegitimate child born to him in

Rome by one Rosa de Felici, this child being the Pietro Moretti whose rights are now in question. The auditing judge finds as a fact that the decedent then came to this country, where he resided until his death on March 17, 1928. In this the auditing judge was, we think, correct, although one of the witnesses testified that the decedent lived here from 1918 until his death. This was probably an error of memory, for it cannot be doubted, from the certificate of birth of Pietro Moretti, that he was born in Rome on October 27, 1920, as the child of Filiberto Moretti and Rosa de Felici.

On June 26, 1926, the decedent, by a power of attorney executed in Philadelphia, appointed his stepmother, Innocenza Mariani, his special attorney in fact, who appeared before a notary in Italy and in his behalf acknowledged Pietro Moretti as his son, as is shown by certificates hereto annexed.

According to the affidavit received in evidence of Armando Salati, an Italian lawyer, the effect of the above action by the decedent, under the law of the Kingdom of Italy, is to establish the legal relationship of father and child between the parties, and to give the child a right to share in the estate of his father, and the Royal Italian Consul General at Philadelphia added his certificate that the above statement is true and correct. The Italan law appears to recognize the procedure of filiation or recognition by formal acknowledgment, and also that of strict legitimation by subsequent matrimony. The former seems to be that followed in this case, and that for adoption is not applicable, but, according to the opinion of counsel, the effect, so far as inheritance is concerned, is the same in either case.

Our Intestate Act of 1917 provides, in section twenty-five, that nothing in the act relative to the distribution of personal estate among kindred shall be construed to extend to the personal estate of an intestate whose domicile at the time of his death was out of this Commonwealth, and this follows the ordinary and familiar rule on the subject: Wharton on Conflict of Laws, Sec. 576 (a).

The initial question in this case is what was the domicile of this intestate? The answer is not free from doubt. He undoubtedly resided here for a period of at least eight years, and engaged here in business. Whether he would be regarded, under the Italian law, as a citizen of Italy or of this country is not material, as citizenship is distinct from domicile, the status in one case being political and in the other civil: Dicey on Conflict of Laws (4th ed.), 95; and residence is also distinct from domicile; the longest residence may be insufficient to establish domicile, and, on the other hand, the shortest residence may be enough. It is clear that Italy was his domicile of origin, and the better authorities clearly hold that this domicile persists until a domicile of choice is acquired, and the burden of proof is upon him who alleges the change: Dicey on Conflict of Laws, 109. Residence in another country, whether long or short, must be with the intention of abandonment of the domicile of origin: Dicey on Conflict of Laws, supra; Story on Conflict of Laws, Sec. 47; Hood's Estate, 21 Pa. 106. His residence here, especially if coupled with his engaging in business, is, of course, evidential: Hood's Estate, 21 Pa. 106; Carey's Appeal, 75 Pa. 201; Dalrymple's Estate, 215 Pa. 367. The testimony on the subject before the auditing judge was certainly scanty. The adjudication states: "No evidence seems to be available to establish his domicile. Since he has resided for eight years in Philadelphia, his estate is to be distributed according to the laws of Pennsylvania;" and the auditing judge, after considering the authorities, awarded the estate to Pietro, the minor child of the decedent, and dismissed the claim of his mother.

If we should hold that the decedent never in fact abandoned his domicile of origin, it follows that the estate should be awarded to Pietro Moretti under

the Italian decree of filiation or recognition, and the exceptions to the award made to him should be dismissed. If, however, the decedent, being a resident of this Commonwealth, changed his domicile animo as well as facto and acquired a domicile of choice in this Commonwealth, we, nevertheless, arrive at the same result. And his residence here and his engaging in business here is indeed some evidence thereof, as the authorities above cited show. The auditing judge has adduced excellent reasons to support his contention, which we need not repeat, but we note in addition that the domicile of Pietro as an illegitimate was by all the authorities that of his mother, who was clearly domiciled in Italy: Dicey on Conflict of Laws, 115, so that the only question is whether the Italian tribunal had jurisdiction to determine his status as an heir of the decedent. In re Goodman's Trusts, 17 Ch. Div. 266, is a well-known authority. It was there held that a child born before the wedlock of its parents, who were at its birth domiciled in Holland, but legitimated according to the law of Holland by the subsequent marriage of its parents, was entitled to share in the personal estate of an intestate dying in England and there domiciled, as one of her next of kin. The judgment of the majority of the court in that case is, in our opinion, conclusive in its reasoning and equitable in its result. See Wharton on Conflict of Laws, Sec. 250 (a). Our own case of Smith v. Derr's Admin'rs, 34 Pa. 126, whch points to a different conclusion, was, as the auditing judge observes, founded on Doe v. Vardill, 5 B. & C. 438, which, if not expressly overruled in In re Goodman, was disapproved, and, moreover, distinguished, on the ground that the decision related to land in England, a distinction which also existed in Smith v. Derr. We, therefore, do not consider the latter case to rule the present.

To illustrate further, our Act of June 24, 1901, P. L. 597, declares the marriage of first cousins to be unlawful and void. In many states the law is otherwise; but it can hardly be contended that if first cousins domiciled in another state, where their marriage is lawful, marry and have children, and afterwards acquire a domicile in this state, their children cannot inherit. We have found no case deciding this precise question, but Schofield v. Schofield, 51 Pa. Superior Ct. 564, goes much further, for there it was held that the marriage of first cousins was lawful where the contracting parties in 1906, knowing that their marriage was prohibited under the Act of 1901, went to Delaware for the express purpose of marriage, were there married, and then returned to Pennsylvania. This case was commented upon in Com. v. Crisara, 2 D. & C. 359, and distinguished in Weiss v. Weiss, 8 D. & C. 534, where the marriage under our law was incestuous, as was also the case of United States v. Rodgers, 109 Fed. 886.

In further illustration, we may refer to the principle that a legacy to one who is less than twenty-one years of age, the age of majority under our law, may be paid to him if he has attained majority by the law of his domicile or has been there legally emancipated: Huey's Appeal, 1 Grant 51, recognized in Keech's Estate, 240 Pa. 491; Wooten's Estate, 26 Dist. R. 734. See, also, Kohne's Estate, 1 Parsons Eq. 399, and the English cases on the subject cited in Dicey on Domicile, 518, note.

The subject might be pursued almost indefinitely, so much has been written upon it, but we do not consider it necessary, as we are of opinion, in the facts of this case, that the status of Pietro was determined by the law of his domicile, and he is, therefore, entitled to his father's estate.

The exceptions to the adjudication are accordingly dismissed and the adjudication is confirmed absolutely.