UNITED STATES ex rel. DEVINE et al. v. RODGERS, Commissioner of Immigration, et al.

(District Court, E. D. Pennsylvania. June 26, 1901.)

1. FOREIGN MARRIAGE—VALIDITY.

   A marriage by a Russian Jew in Russia with his niece, though lawful in Russia, will not be recognized as valid in Pennsylvania, where a continuance of the relation would expose the parties to indictment in the criminal courts.

2. ALIENS—EXCLUSION.

   Where a naturalized citizen was married in Russia, but the marriage, though valid there, was illegal in the United States, his alleged wife and their child, who are likely to become public charges, are properly ordered to be deported on their arrival at a port in the United States.

John J. K. Scott, for relators.

N. Dubois Miller, for International Navigation Company.

Wm. M. Stewart, Jr., Asst. U. S. Atty., for United States commissioner of immigration.

J. B. McPHERSON, District Judge. The relator is a naturalized citizen of the United States, and is the husband of Rosa Devine, and the father of her idiot son, William. Rosa and William are Russian Jews, whom the commissioner of immigration at the port of Philadelphia has ordered to be deported, on the ground that both are aliens, and that William is an idiot, and Rosa is a pauper that is likely to become a public charge. The alienage of both is denied upon the ground that when the husband and father became a citizen the wife and child ceased to be aliens; and this is the only point to be decided. The decision is admitted to depend upon the answer to be given to the question whether Rosa is the relator's lawful wife, or, rather, whether she is to be so regarded in this state; for she is her husband's niece, and such a marriage, if originally celebrated in Pennsylvania, would be void: Act 1860, § 39 (P. L. 393); 1 Purd. Dig. (Ed. 1872) p. 54. Among the Jews in Russia, however, where the ceremony took place, it has been satisfactorily proved that a marriage between uncle and niece is lawful, and, being valid there, the general rule undoubtedly is that such a marriage would be regarded everywhere as valid. But there is this exception, at least, to the rule: If the relation thus entered into elsewhere, although lawful in the foreign country, is stigmatized as incestuous by the law of Pennsylvania, no rule of comity requires a court sitting in this state to recognize the foreign marriage as valid. I think the following quotation from Dr. Reinhold Schmid, a Swiss jurist of eminence, to be found in Whart. Confl. Laws (2d Ed.) § 175, correctly states the proper rule upon this subject:

"When persons married abroad take up their residence with us, it is agreed on all sides that the marriage, so far as its formal requisites are concerned, cannot be impeached, if it corresponds either with the laws of the place where the married pair had their domicile, or with those where the marriage was celebrated. But we must not construe this as implying that the juridical validity of the marriage depends absolutely on the laws of the place under whose dominion it was constituted; for the fact that a marriage was void by the laws of a prior domicile is no reason why we should declare it void if it united all the requisites of a lawful marriage as they are imposed by our laws. So far as concerns the material conditions of the contract of marriage, we must distinguish between such hindrances as would have impeded marriage, but cannot dissolve it when already concluded, and such as would actually dissolve a marriage if celebrated in the face of them. A matrimonial relation that in the last sense is prohibited by our laws cannot be tolerated in our territory, though it was entered into by foreigners before they visited us. We will, therefore, tolerate no polygamous or incestuous unions of foreigners settling within our limits."

Other authority may be found in State v. Brown, 47 Ohio St. 102, 23 N. E. 747, where it is said, in determining the effect of a statute that forbade sexual intercourse between persons nearer of kin than cousins:

"We hold, therefore, that by section 7019, Rev. St., sexual commerce as between persons nearer of kin than cousins is prohibited, whether they have gone through the form of intermarriage or not; nor is it material that the marriage was celebrated in a country where it was valid, for we are

not bound, upon principles of comity, to permit persons to violate our criminal laws, adopted in the interest of decency and good morals, and based upon principles of sound public policy, because they have assumed, in another state or country, where it was lawful, the relation which led to the acts prohibited by our laws."

See, also, Inhabitants of Medway v. Inhabitants of Needham, 16 Mass. 157, 8 Am. Dec. 131, and In re Stull's Estate, 183 Pa. 625, 39 Atl. 16, 39 L. R. A. 539.

In view of this exception to the general rule, it seems to me to be impossible to recognize this marriage as valid in Pennsylvania, since a continuance of the relation here would at once expose the parties to indictment in the criminal courts, and to punishment by fine and imprisonment in the penitentiary. In other words, this court would be declaring the relation lawful, while the court of quarter sessions of Philadelphia county would be obliged to declare it unlawful. Whatever may be the standard of conduct in another country, the moral sense of this community would undoubtedly be shocked at the spectacle of an uncle and niece living together as husband and wife; and I am, of course, bound to regard the standard that prevails here, and to see that such an objectionable example is not presented to the public. A review of the Pennsylvania legislation affecting the marriage of uncle and niece will be found in Parker's Appeal, 44 Pa. 309. It is accordingly ordered that Rosa and William Devine be remanded.