In re Estate of Stiles, Deceased.

[Cite as In re Estate of Stiles (1979), 59 Ohio St. 2d 73.]

(No. 78-1299—Decided July 18, 1979.)

74

*Messrs. Kimble, Shapiro, Stevens, Harcha, Young & Clark, Mr. Roger L. Clark* and *Mr. Stephen C. Rodeheffer,* for appellee.

*Messrs. Howland, McCurdy, Dever & Mearan* and *Mr. William L. Howland,* for appellant.

MAHONEY, J. The singular issue before us is whether a common-law marriage between an uncle and his niece is void or voidable. If it is merely voidable, then it can not be collaterally attacked after the death of one of the parties.

Statutory law clearly prohibits the marriage of an uncle to his niece. R. C. 3101.01 reads as follows:

"Male persons of the age of eighteen years, and female persons of the age of sixteen years, not nearer of kin than second cousins, and not having a husband or wife living, may be joined in marriage. * * *"

Prior to 1974, former R. C. 2905.07 and its predecessors, G. C. 13023 and R. S. 7019, treated sexual intercourse between a niece and her uncle as incestuous and criminally punishable.

R. C. 2905.07 reads as follows:

"No persons, being nearer of kin, by consanguinity or affinity, than cousins, having knowledge of such relationship, shall commit adultery or fornication together.

"Whoever violates this section shall be imprisoned not less than one nor more than ten years."

We find from the case law that the courts in Ohio which have considered this question prior to 1974 have held the uncle and niece marriage to be void *ab initio.* See *State* v. *Brown* (1890), 47 Ohio St. 102; *Heyse* v. *Michalske* (1940), 31 Ohio Law Abs. 484; *Basickas* v. *Basickas* (1953), 93 Ohio App. 531.

Appellee urges us to apply the reasoning of this court in *Mazzolini* v. *Mazzolini* (1958), 168 Ohio St. 357. The ma-

jority opinion in *Mazzolini* adopted what they considered to be the modern trend, that unless a prohibitory marriage statute expressly declared such marriage void, they were merely voidable. The opinion further noted that sexual intercourse between first cousins was not incest in Ohio. By a 4 to 3 decision, the court held in paragraph three of the syllabus:

"Although a marriage in Ohio between first cousins is not approved by law, it is not expressly prohibited and made void by any statutory enactment, and, where first cousins by blood, one a resident of Massachusetts and the other a resident of Ohio, are lawfully married in Massachusetts and remove to Ohio to live, such marriage is not void in Ohio, and an action by the Ohio resident instituted in Ohio to annul the marriage on the ground that it is void *ab initio* cannot be maintained."

*Mazzolini, supra,* involved the doctrine of *lex loci contractus* and a unique Massachusetts statute. We decline to adopt its reasoning, and we confine its holding to the peculiar fact situation that confronted this court at that time.

We hold that the marriage of an uncle to his niece is incestuous and void *ab initio*. To hold otherwise would be a mockery of the statute and emasculate the purpose of marriage laws. Such incestuous marriages "are shocking to good morals, [and are] unalterably opposed to a well defined public policy * * *." (See *Mazzolini, supra,* at page 358.) They are meretricious in their conception and can never ripen into anything better. Were we to hold to the contrary, these parties would be permitted to profit and take advantage of their violation of the law. The state has an interest in all marriages and is virtually a party to them. The state's interest can only be protected properly by treating such meretricious relationships as void *ab initio*.

Appellee correctly points out that under the new Criminal Code, effective January 1, 1974, R. C. 2905.07 was reappealed and sexual intercourse between an uncle and his niece was no longer criminally punishable. She argues that this was a new expression of the public policy.

One of the purposes of the new Criminal Code (H. B.

No. 511) was to decriminalize certain unlawful sexual behavior and leave the parties to whatever chastisement society would impose without making them criminally liable. It was supposedly an enlightened approach to "social crimes." We do not believe that the General Assembly intended to change the state's public policy so as to favor fornication, adultery, rape of one spouse by the other, sodomy, fellatio, homosexuality and some forms of incest.

Accordingly, we reverse the judgment of the Court of Appeals.*

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

MAHONEY, J., of the Ninth Appellate District, sitting for P. BROWN, J.

---

*Although we find that the appellate court correctly determined that the trial court had erred in its evidentiary rulings as to proof of a common-law marriage, such error was not prejudicial, since, even if proven, such a marriage would be void *ab initio*.