764 P.2d 1327

STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT.

In the Matter of JACINTA M., a child, and concerning Patricia Ann McLendon, Respondent.

No. 10519.

Court of Appeals of New Mexico.

Nov. 3, 1988.

Hal Stratton, Atty. Gen., Jennifer A. Salisbury, Gen. Counsel, Dale S. Morritz, Asst. Gen. Counsel, Human Services Dept., Santa Fe, for petitioner-appellant.

Robert S. Orlick, Clovis, for respondent.

Stephen Quinn, Clovis, Guardian Ad Litem.

## OPINION

APODACA, Judge.

The Department of Human Services (the Department) appeals a children's court order entered after a periodic review of a dispositional judgment with respect to Jacinta M. (the child). The child had been previously adjudicated neglected and abused and placed in the legal and physical custody of the Department. The Department raises three issues: whether the children's court (1) erred in ordering that the child not be placed in the care of her brother; (2) erred in finding that the child's brother was unsuitable as a custodian solely on the basis of his alleged homosexuality; and (3) should consider at a periodic review the same factors it is required to consider in the initial disposition. We hold that the children's court exceeded its authority and therefore reverse that portion of its order prohibiting the Department from placing the child with her brother.

The periodic review is a proceeding to determine whether a change in an initial disposition is warranted by a change in circumstances. Periodic reviews allow a court to review the status of children who have been adjudicated neglected or abused. The court determines whether the Department has made reasonable efforts to institute a treatment plan for the parent or guardian and whether the parent or guardian has made some effort to comply with the plan. *See* NMSA 1978, § 32-1-38.1(C) (Cum.Supp.1988). The court then determines whether it is in the best interests of the child to continue legal custody in the Department, to return the child to the parent, to transfer legal custody, or to terminate parental rights. § 32-1-38.1(F). Here, the court determined legal custody should remain with the Department. *See* § 32-1-38.1(F)(4).

In 1984, a petition was filed alleging neglect of the child and her brother, who has since been emancipated. As a result, the children's court adjudged the child abused and neglected and placed legal custody with the Department and physical custody with the mother. Three months later, the child was removed from the mother's physical custody under an ex parte order. The children's court at that time placed physical and legal custody of the child with the Department and scheduled a review in ninety days. A treatment plan for the mother included counseling for an alcohol problem. Periodic reviews continued every six months.

When physical custody was transferred, the Department filed a separate action seeking to terminate parental rights. The children's court terminated the father's rights, found that the child was neglected and abused and that the conditions were unlikely to change in the foreseeable future, despite reasonable efforts by the Department to assist the mother. The chil-

dren's court, however, denied termination of the mother's parental rights.

In March 1987, following another periodic review, the children's court continued physical and legal custody in the Department and ordered home studies on the child's mother and brother. In October 1987, another periodic review hearing was held. It is from the order entered then that the Department has appealed.

At that hearing, the Department stated. its intention to place the child with her brother in California. Statements and testimony were received concerning the home study conducted on the brother by the California Social Services Department. That department's report was "very positive" in recommending placement with the brother. He was living in a desirable area of Los Angeles, had completed three years toward his bachelor's degree and was a supervisor earning a good salary at his place of employment. The brother was anxious to have his sister come live with him and had shown the skills necessary to care for her.

The child's guardian ad litem stated he favored placing the child with the brother, since he considered placement with a family member in the child's best interests. The child's mother, although expressing concern that the child would not have a female role model in California, nevertheless stated that placement with the brother "might be the best thing" for the child. After presentation by the Department and statements by the guardian ad litem and the mother, the children's court questioned the brother's sexual orientation and whether he was "actively" homosexual. The children's court asked about alternatives to placement with the brother. The Department indicated the only alternative was long-term foster care and that it preferred placement with a suitable relative.

The order entered by the children's court at this hearing found there was a negative home study on the child's mother and a positive home study on the brother. It also found the brother could not provide a proper environment for his sister due to his homosexuality and that it was not in her best interests to be placed with a homosexual brother. The children's court ordered that the child remain in the legal and physical custody of the Department and that she remain in her current foster care situation and not be placed with her brother.

■■■ The authority of the children's court is limited by the Children's Code. *See In Re Doe,* 88 N.M. 632, 545 P.2d 491 (Ct.App.1975). Although the Code authorizes the children's court to order that legal custody remain with the Department, *id.,* it does not grant the court the power to dictate to the Department where the child should be placed. *See* § 32-1-38.1(F). Additionally, legal custody is a legal status created by court order that vests in a person or agency the right to determine where and with whom a child will live. NMSA 1978, § 32-1-3(J) (Cum.Supp.1988). Thus, we conclude that, once legal custody was in the Department, the children's court had no authority to prohibit the Department from placing physical custody of the child with any particular person. Although granting such authority to the children's court might serve a useful purpose, the present statute does not do so.

Although our holding that the children's court exceeded its authority is dispositive of this appeal, we nonetheless feel compelled to comment on the children's court findings regarding the brother's homosexuality because the issue may resurface at a later periodic review. Findings of a trier of fact must be supported by the evidence presented. *Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 722 P.2d 671 (Ct.App.1986). In this case, the children's court found the brother could not provide the child with the proper environment because of his homosexuality. It also entered a finding that homosexuality is an illness. There was absolutely no testimony the brother's sexual orientation would render him unfit to care for the child. Likewise, there was no evidence presented that homosexuality is an illness. We have searched the record and conclude that it is bare of any evidence to support these findings.

■■■ Disapproval of morals or other personal characteristics cannot be used to determine the fitness of a person to care

for a child. *See Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977); *Fitzsimmons v. Fitzsimmons,* In so concluding, we are not suggesting that a person's associational or even sexual conduct may not be relevant in deciding custody. But there must be compelling evidence that such conduct has significant bearing on the best interests of the child. *See D.H. v. J.H.,* 418 N.E.2d 286 (Ind.App.1981) (homosexuality, standing alone without evidence of any adverse effect upon welfare of children, would not render wife unfit as a matter of law to have custody); *Guinan v. Guinan,* 102 A.D.2d 963, 477 N.Y.S.2d 830 (1984) (a parent's sexual indiscretions should be a consideration in a custody dispute only if they are shown to adversely affect the child's welfare); *DiStefano v. DiStefano,* 60 A.D.2d 976, 401 N.Y.S.2d 636 (1978) (in custody contest, while sexual lifestyle of a parent may properly be considered in determining what is best for children, its consideration must be limited to its present or reasonably predictable effect on the children's welfare); *In re Marriage of Cabalquinto,* 100 Wash.2d 325, 669 P.2d 886 (1983) (En Banc) (homosexuality in and of itself not a bar to custody).

There is nothing in the record to indicate the brother could not provide a proper environment for the child. In fact, the evidence was to the contrary. We believe the sexual orientation of a proposed custodian, standing alone, is not enough to support a conclusion that the person cannot provide a proper environment. It follows that the children's court findings that the brother could not provide a suitable environment for the child because of his homosexuality are not supported by the evidence.

Because of our disposition, we find it unnecessary to discuss Issue (3). The case is remanded to the children's court with orders to vacate that portion of its order concerning physical custody of the child. No costs are awarded.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.