2008-NMCA-091

188 P.3d 1261

**FOWLER BROTHERS, INC.,**
**Plaintiff–Appellant,**

v.

**Horace BOUNDS, Defendant–Appellee.**

**No. 27,649.**

Court of Appeals of New Mexico.

May 27, 2008.

Lopez & Associates, P.C., William Perkins, Silver City, NM, for Appellant.

Keleher & McLeod, PA, Benjamin F. Feuchter, Albuquerque, NM, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} This case requires us to determine whether Fowler Brothers, Inc. (Plaintiff) can recover damages for construction work it performed in Arizona without an Arizona contractor's license. Plaintiff performed the work pursuant to a contract that purported to define Plaintiff as an employee instead of an independent contractor. Plaintiff brought suit in Grant County, New Mexico to recover damages from Horace Bounds (Defendant) for breach of that contract and for unjust enrichment. The matter proceeded to a non-jury trial before the district court. At the close of Plaintiff's case in chief, Defendant moved to dismiss the case on the ground that both Arizona and New Mexico law barred Plaintiff from recovery because both jurisdictions required Plaintiff to have a contractor's license for the work Plaintiff performed. The district court granted the motion and dismissed the case. We affirm.

## BACKGROUND

{2} Plaintiff and Defendant are New Mexico citizens who entered into a contract (the Contract) regarding construction work that both parties were to perform in Arizona for a third party, Sage Design Builders, Inc. (SDB). Plaintiff did not have the required contractor's license to perform construction work in Arizona, although Defendant did have such a license. The parties attempted to address this situation by styling the Contract as a "Contract of Employment" that purported to create an employer-employee relationship between Defendant and Plaintiff, respectively. SDB signed a separate contract with Defendant to perform the construction work with the understanding that Plaintiff's vice president, Jeb Fowler, would be on the job site to supervise the construction project.

{3} SDB defaulted on its obligation to pay Defendant, and Defendant ceased work on the project. Plaintiff also ceased working on the project after cleaning up hazardous areas on the work site. Having never received payment from SDB, Defendant refused to pay Plaintiff for the work Plaintiff had performed.

{4} Plaintiff brought suit against Defendant in Grant County, New Mexico for breach of contract and unjust enrichment. The case proceeded to a bench trial on February 20, 2007. Following Plaintiff's case in chief, Defendant moved to dismiss Plaintiff's claims under Rule 1–041(B) NMRA on the ground that, as an unlicensed contractor, Plaintiff was not entitled to relief under either Arizona or New Mexico law. The district court granted the motion and entered an order dismissing the case.

{5} The district court's order included the following findings of fact and conclusions of law:

[Findings of Fact]

1. At all material times, Plaintiff was an independently-established contracting business.

2. On or about November 1, 1999, Defendant entered into an agreement with [SDB] to perform an earthmoving project in Bullhead City, Arizona ("Project").

3. As of that date, Defendant had an Arizona contractor's license.

4. On or about that same date, Plaintiff and Defendant entered a "Contract of Employment" regarding the Project ("Contract").

5. Plaintiff, however, did not have an Arizona contractor's license at that time, and was therefore not able to work on the Project as a contractor or subcontractor.

6. The Contract designated Plaintiff as Defendant's "employee" on the Project because Plaintiff lacked an Arizona contractor's license.

7. Plaintiff and Defendant signed the Contract in Bullhead City, Arizona.

8. The Contract stated that Plaintiff would provide equipment and personnel for Defendant's use on the Project.

9. Plaintiff performed significant amounts of earthmoving work in Bullhead City, Arizona, on the Project.

10. Plaintiff provided its own equipment and personnel for its earthmoving work on the Project.

11. Defendant did not agree to compensate Plaintiff for its earthmoving work through the payment of a salary or wages, but rather, Defendant agreed to compensate Plaintiff by paying rental rates for [Plaintiff's] equipment on the Project.

12. Defendant did not provide insurance, or obtain any licenses, for Plaintiff in connection with the Project.

13. Plaintiff did not work on the Project in the capacity of an employee.

[Conclusions of Law]

1. Arizona law and public policy prohibit unlicensed contractors from recovering for their work under any cause of action, including equitable remedies.

2. New Mexico law and public policy prohibit unlicensed contractors from recovering for their work under any cause of action, including equitable remedies.

3. Under either Arizona or New Mexico law, Plaintiff was required to have an Arizona contractor's license to perform work on the Project.

4. Under either Arizona or New Mexico law, Plaintiff is prohibited from recovering under any cause of action, including equitable remedies, for its work on the Project, because it did not have such a license.

{6} Plaintiff timely filed a notice of appeal. Although the parties raise many contentions, we consolidate the issues as follows. We first consider whether the district court correctly determined that no conflict exists between Arizona and New Mexico law with respect to the circumstances of this case. Concluding that no conflict exists, we next review the district court's determination that Plaintiff was not Defendant's employee and was therefore required to have a contractor's license. Finally, we examine whether Plaintiff substantially complied with the applicable licensing requirements so as to excuse Plaintiff from the general bar to recovery for unlicensed contractors. Because we agree with the district court's conclusion that Plaintiff's recovery is barred in this case, we do not reach Plaintiff's evidentiary claims regarding damages.

## DISCUSSION

### A. Standard of Review

{7} We review a district court's dismissal of a case on the merits under Rule 1–041(B)

**514**

to see whether substantial evidence supports the district court's factual findings. *Blancett v. Homestake–Sapin Partners,* 73 N.M. 47, 48, 385 P.2d 568, 569 (1963). In doing so, we view the evidence in the light most favorable to support the district court's findings. *Id.* We review the district court's determination of the applicable law, as well as its application of the law to the facts, de novo. *See Nat'l Bank of Ariz. v. Moore,* 2005–NMCA–122, ¶ 7, 138 N.M. 496, 122 P.3d 1265 (applying de novo standard of review to district court's choice of law decision); *Garcia v. Jeantette,* 2004–NMCA–004, ¶ 15, 134 N.M. 776, 82 P.3d 947 ("[W]e review the application of the law to the facts de novo.").

**B. This Case Presents No Conflict Between Arizona and New Mexico Law**

{8} The district court avoided the choice of law issue in this case by determining, albeit implicitly, that the applicable laws of Arizona and New Mexico were the same or would yield the same results. More specifically, the district court dismissed Plaintiff's claims on the basis of its legal conclusion that, "[u]nder either Arizona or New Mexico law, Plaintiff is prohibited from recovering under any cause of action, including equitable remedies, for its work on the Project, because it did not have [an Arizona contractor's] license." Implicit in the district court's conclusion is its determination that there exists no conflict between Arizona and New Mexico law as it relates to the dispositive issue in this case, i.e., whether Plaintiff was required to have an Arizona contractor's license in order to recover damages for its work on the Project.

{9} The false conflict doctrine allows a court to avoid a choice of law question when the laws of the involved states would produce identical results. *Ferrell v. Allstate Ins. Co.,* 2007–NMCA–017, ¶¶ 9, 19, 141 N.M. 72, 150 P.3d 1022, *cert. granted,* 2007–NMCERT–001, 141 N.M. 164, 152 P.3d 151. We have previously emphasized that the focus of the doctrine is not on whether the laws are superficially identical as written, but whether the effect of laws would be identical as applied to a particular case. *See id.* ¶ 19 ("[I]f the various state laws are superficially identical ... but could produce different re-

sults, then it would be inappropriate to employ the false conflict doctrine."). "The purpose of the doctrine is to avoid complicated choice-of-law questions when the answer to those questions would not make a difference." *Id.*

{10} Additionally, some courts will apply the false conflict doctrine "when the policies of one state would be furthered by the application of its laws while the polic[ies] of the other state would not be advanced by the application of its laws." *Tune v. Philip Morris, Inc.,* 766 So.2d 350, 352 (Fla.Dist.Ct. App.2000). Put another way, "a comprehensive conflict-of-laws analysis should not be required when only one state has a legitimate interest in the law to be applied." *Id.*

{11} We now turn to the question of whether Arizona and New Mexico law are identical as applied to the facts of this case. More specifically, we examine how both jurisdictions (1) define the term "contractor" and (2) limit the right of recovery for unlicensed contractors. In doing so, we ask whether the law of both jurisdictions would lead to the same result if applied to this case. We also ask whether only one state has a legitimate interest in having its law applied in this case.

{12} The law governing contractor licensing in Arizona is found at Ariz.Rev.Stat. Ann. §§ 32–1101 to –1170.02 (1951, as amended through 2007). The law governing contractor licensing in New Mexico is the Construction Industries Licensing Act (CILA), codified at NMSA 1978, §§ 60–13–1 to –59 (1967, as amended through 2007).

**C. Definition of Contractor**

{13} One who undertakes to perform earthmoving work, as did Plaintiff in the present case, is a contractor under Arizona and New Mexico law. The applicable Arizona statute, Ariz.Rev.Stat. Ann. § 32–1101(A)(3), defines a contractor, in relevant part, as follows:

"Contractor" ... means any person, firm, partnership, corporation, association or other organization, or a combination of any of them, that, for compensation, undertakes ... to:

(a) Construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof[.]

The corresponding law in New Mexico is Section 60–13–3, which defines a contractor, in pertinent part, as follows:

As used in the [CILA], "contractor":

A. means any person who undertakes ... contracting. Contracting includes constructing, altering, repairing, installing or demolishing any:

...

(12) leveling or clearing land;

(13) excavating earth[.]

*Id.*

{14} Apart from its argument regarding its status as an employee and/or owner-operator of equipment under the Contract, which we address in further detail below, Plaintiff does not dispute that the earthmoving work it performed was the work of a contractor under the foregoing statutes. To the contrary, Plaintiff admits that the purpose of the Contract was to enable Plaintiff to perform such work without an Arizona contractor's license. Thus, although the statutes are not identical as written, we conclude that the statutes have the identical effect of categorizing Plaintiff as a contractor in light of the earthmoving work Plaintiff performed.

**D. Limitation on the Right of Recovery for Unlicensed Contractors**

{15} Both Arizona and New Mexico law prohibit unlicensed contractors from recovering damages for work that requires a contractor's license. The applicable Arizona statute, entitled "Proof of license as prerequisite to civil action" and codified at Ariz.Rev. Stat. Ann. § 32–1153, states that:

No contractor as defined in [section] 32–1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

"[T]he purpose of [section] 32–1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maint. Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 900 P.2d 1210, 1213 (1995) (en banc).

{16} The corresponding New Mexico statute, entitled "Suit by contractor for compensation; pleading and proof of license" and codified at Section 60–13–30, provides, in relevant part, that:

No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the [CILA] without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

Section 60–13–30(A). Section 60–13–1.1 sets forth the legislative purpose of the CILA, which is:

to promote the general welfare of the people of New Mexico by providing for the protection of life and property by adopting and enforcing codes and standards for construction, alteration, installation, connection, demolition and repair work.

Section 60–13–1.1. Our Supreme Court has observed that "[t]he object sought to be accomplished by the [CILA] is a healthy, ordered market in which consumers may contract with competent, reliable construction contractors who have passed the scrutiny of a licensing division." *Mascareñas v. Jaramillo*, 111 N.M. 410, 413, 806 P.2d 59, 62 (1991). "The purpose of the [CILA] is to protect the public from incompetent and irresponsible builders." *Id.* (internal quotation marks and citation omitted).

{17} In light of the strong policy in both states of protecting the public from irresponsible contractors, the appellate courts of Arizona and New Mexico have interpreted their respective statutes as prohibiting unlicensed contractors from seeking equitable remedies, as well. *See, e.g., Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 41 P.3d 651, 655

(App.2002) (stating that permitting an unlicensed contractor to recover in equity "would completely nullify the statute" (citation omitted)); *Gamboa v. Urena,* 2004–NMCA–053, ¶ 15, 135 N.M. 515, 90 P.3d 534 (noting that Section 60–13–30 "authorize[s] the unjust enrichment of the recipients of work performed by unlicensed contractors" (internal quotation marks and citation omitted)). These statutes and cases support the district court's conclusion that the "law and public policy [of Arizona and New Mexico] prohibit unlicensed contractors from recovering for their work under any cause of action, including equitable remedies."

{18} However, despite asserting that New Mexico law should apply in this case, Plaintiff argues that the policy supporting Arizona's licensing statute is more lenient than the policy supporting the licensing statute in New Mexico. Plaintiff notes that in *Mascareñas,* our Supreme Court required an unlicensed contractor to return money that was paid to him, 111 N.M. at 414, 806 P.2d at 63, while the Arizona Court of Appeals in *Bentivegna v. Powers Steel & Wire Products, Inc.,* 206 Ariz. 581, 81 P.3d 1040, 1046–47 (App. 2004), held that unlicensed contractors are not required to pay restitution under the Arizona licensing statute. Plaintiff adds that the Court in *Bentivegna* stated that the purpose of the Arizona licensing statute "is not to penalize contractors," *id.* at 1046, while we stated in *Gamboa* that "our Supreme Court [in *Mascareñas* ] . . . established that the legislature intended to punish contractors who fail to obtain licenses." *Gamboa,* 2004–NMCA–053, ¶ 13, 135 N.M. 515, 90 P.3d 534.

{19} We agree that the result in *Mascareñas* reflects a stricter policy towards unlicensed contractors than does the result in *Bentivegna.* However, the Court in *Mascareñas* did not explicitly mention punishment as an aspect of the policy behind the New Mexico licensing statute. *But see Koehler v. Donnelly,* 114 N.M. 363, 364, 838 P.2d 980, 981 (1992) ("Our legislature has chosen to harshly penalize unlicensed contractors by denying them access to the courts to collect compensation for work performed."). Additionally, Section 60–13–1.1, which sets forth the purpose of the CILA,

makes no mention of punishing contractors, but instead speaks in terms of promoting the general welfare and protecting the life and property of New Mexicans. In any event, regardless of whether punishment is a purpose or an effect of New Mexico's licensing statute, Plaintiff is correct that the law in Arizona and New Mexico achieved different results in *Bentivegna* and *Mascareñas* based on New Mexico's stricter application of the licensing statute in the latter case.

{20} However, the law of both states *as applied to the present case* would achieve the same outcome. Although the states differ regarding whether an unlicensed contractor can retain funds that the contractor has already received, both states prohibit the contractor from recovering money that the contractor has not yet received. Plaintiff in the present case did not receive funds in advance of performing its work on the Project and initiated the present suit to recover money Defendant allegedly owes Plaintiff. Therefore, it makes no difference in this case whether the New Mexico licensing statute is supported by the additional purpose of punishing unlicensed contractors because the Arizona licensing statute also precludes recovery.

{21} Nevertheless, Plaintiff makes a separate argument in which it seems to assert that neither statute applies in this case. Plaintiff argues, on the one hand, that New Mexico law controls in this case, yet New Mexico has no interest in protecting or regulating contracting matters in Arizona. More specifically, Plaintiff points out that Section 60–13–30 applies to licensing and contracting activities occurring within the State of New Mexico and does not purport to apply to such activities occurring outside of the state. On the other hand, Plaintiff maintains that Ariz. Rev.Stat. Ann. § 32–1153 only applies to actions brought within "any court of the state [of Arizona]" and therefore does not prevent an unlicensed contractor from bringing suit in another state. Thus, Plaintiff seems to argue, neither statute prevents Plaintiff from bringing suit in New Mexico to recover for contracting work performed in Arizona.

{22} Plaintiff's argument, while clever, is without merit. Plaintiff is correct that Ariz.

Rev.Stat. Ann. § 32–1153 prevents an unlicensed contractor from bringing "any action *in any court of the state* for collection of compensation." (Emphasis added.) However, we refuse to read the phrase "in any court of the state" as an invitation by the Arizona legislature for unlicensed contractors to sue in another jurisdiction to recover for contracting work performed in Arizona. Such a result would be contrary to the basic purpose of the statute. The more likely explanation of the phrase is that it reflects the Arizona legislature's intent to establish the broadest prohibition against suit within the geographic boundaries of its power. Therefore, while Plaintiff is correct that the Arizona legislature cannot restrict the jurisdiction of New Mexico courts to hear this suit between New Mexico citizens, we will not construe section 32–1153 in a way that leads to the result Plaintiff advocates. *See City of Rio Rancho v. Logan*, 2008–NMCA–011, ¶ 18, 143 N.M. 281, 175 P.3d 949 ("[A] statute will be construed to avoid an absurd result.").

■ {23} Moreover, we agree with Defendant that the principle of comity militates against allowing Plaintiff to exploit the apparent loophole in the Arizona licensing statute. "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Sam v. Sam*, 2006–NMSC–022, ¶ 19, 139 N.M. 474, 134 P.3d 761 (internal quotation marks and citation omitted). "As a general rule, comity should be extended. Only if doing so would undermine New Mexico's own public policy will comity not be extended." *Id.* ¶ 21.

{24} A prohibition from suit in New Mexico courts for a contractor who performs contracting work in another state without a license does not violate New Mexico public policy. As Plaintiff points out, New Mexico has no interest in the regulation of contracting matters occurring in other states. However, Arizona does have a legitimate interest in having its law and policy applied to this case. This, alone, is reason enough to conclude that Arizona and New Mexico law do not conflict and that Arizona law should apply. *Tune,* 766 So.2d at 352.

{25} Additionally, we are mindful that the applicable New Mexico statute, Section 60–13–30, has the same "in any court of the state" language. If we were to adopt Plaintiff's reading of section 32–1153, we would be inviting the courts of other states to construe Section 60–13–30 in the same fashion. We do not think our legislature intended such a result any more than did the legislature of Arizona.

{26} In sum, we conclude that Arizona and New Mexico law do not conflict as applied to this case. Both jurisdictions prohibit an unlicensed contractor from recovering damages—under any theory—for contracting work. This prohibition is based on the strong public policy in both states of protecting the public from irresponsible contractors. Additionally, principles of statutory construction and comity militate against allowing an unlicensed contractor to circumvent the licensing statute of one jurisdiction by bringing suit in the other jurisdiction. Accordingly, we affirm the district court's implicit application of the false conflict doctrine.

{27} We now turn to our review of the district court's conclusion that Plaintiff was not an employee and therefore was required to have a contractor's license in order to recover for the contracting work Plaintiff performed on the Project.

**E. Employee Versus Independent Contractor**

■ {28} Employees are not subject to the licensing requirements for contractors in Arizona and New Mexico. *See* Ariz.Rev.Stat. Ann. § 32–1121(A)(11) (exempting from licensing requirement "[a]ny person who engages in the activities regulated by this chapter … as an employee with wages as the person's sole compensation"); Section 60–13–3(D)(13) (excluding from the definition of contractor "an individual who works only for wages"). Plaintiff argues that, as Defendant's employee, it was not subject to Arizona's licensing requirement for its work on the Project. However, the district court found that "Plaintiff did not work on the Project in the capacity of an employee." We review the district court's finding for substantial evi-

**518**

dence. *See Mascareñas,* 111 N.M. at 412, 806 P.2d at 61 (reviewing district court's determination of party's status as employee or independent contractor for substantial evidence).

{29} Arizona and New Mexico cases emphasize that the determination of employee versus independent contractor turns primarily on the degree of an employer's control over the work performed. *See, e.g., Simon v. Safeway, Inc.,* 217 Ariz. 330, 173 P.3d 1031, 1035 (App.2007) ("[O]ur case law distinguishes a servant from an independent contractor primarily based on the employer's right to control how the work is performed."); *Mascareñas,* 111 N.M. at 412, 806 P.2d at 61 ("The principal test to determine whether one is an independent contractor or an employee is whether the employer has any control over the manner in which the details of the work are to be accomplished." (internal quotation marks and citation omitted)). The fact that the Contract defined Plaintiff as an employee is not controlling. *Cf. Blea v. Fields,* 2005–NMSC–029, ¶ 12, 138 N.M. 348, 120 P.3d 430 ("How an employment contract defines the status of an individual, while relevant and material, does not answer whether an individual is a public employee or an independent contractor.").

{30} Our Supreme Court has noted that a variety of factors are relevant to determining control, including:

(1) whether the employer is entitled to control the manner and means of the individual's performance; (2) the method of compensating the individual; (3) whether the employer has furnished equipment for the individual; ... (4) whether the employer has the power to terminate the individual without cause[;][5] the type of occupation involved and whether it is generally performed without supervision; [6] the skill required for the job; [7] whether the employer furnishes the tools or instrumentalities for the job; [8] how long the individual has been employed; [9] whether the work is part of the employer's regular business; and [10] whether the employer is engaged in business activities.

*Id.* (citation omitted). The Arizona Court of Appeals has applied similar factors in distinguishing between an independent contractor and an employee, such as (1) authority over the employed party's assistants, (2) whether the employer provides instructions for performing the work, (3) whether the employer retains the right to discharge the employed party, and (4) whether the employer furnishes tools and materials. *Fullerton v. Ariz. Dep't of Econ. Sec.,* 135 Ariz. 360, 661 P.2d 210, 212–14 (App.1983). Although the above cases discuss factors indicating control in the context of establishing the vicarious liability of an employer, most if not all of these factors apply in the contractor's licensing context, as well.

{31} In the present case, the parties dispute whether and how much control Defendant had over the manner in which Plaintiff performed its work on the Project. Defendant argues that substantial evidence demonstrates that he lacked control over Plaintiff because there was testimony at trial that (1) SDB only hired Defendant on the condition that Plaintiff's vice president be on the work site to direct Defendant on the Project; (2) Plaintiff's vice president did, in fact, tell Defendant how to do the work and threatened to pull out of the Project if Defendant did not comply; and (3) Plaintiff's vice president had authority over Defendant as the Project's superintendent. Defendant also points out that there was testimony at trial regarding other factors indicating that Plaintiff was not an employee, such as (1) Plaintiff mostly used its own tools and equipment at the Project site; (2) Defendant had no authority to fire any of Plaintiff's employees, nor did the Contract give Defendant the right to fire Plaintiff; (3) Plaintiff paid for its own insurance and workers' compensation coverage; (4) Plaintiff was not compensated through wages for its work on the Project; and (5) Defendant did not withhold any taxes on behalf of Plaintiff.

{32} Plaintiff disputes Defendant's claim that he did not control Plaintiff on the Project. In support of this position, Plaintiff asserts that the record contains evidence showing that Defendant did control Plaintiff and that Plaintiff was no more than an owner-operator of equipment and lessor of employees. However, it is not the role of the

appellate courts to reweigh evidence, and "[w]e will not substitute our judgment of the facts for that of the trial court." *Mascareñas*, 111 N.M. at 412, 806 P.2d at 61. "Our duty is to interpret the findings made to determine whether they are sufficient to support the judgment entered thereon." *Id.*

{33} We agree with Defendant that substantial evidence supports the district court's conclusion that Plaintiff was not Defendant's employee. Among other things, the district court found that (1) "Plaintiff was an independently-established contracting business"; (2) "Plaintiff provided its own equipment and personnel for its earthmoving work on the Project"; (3) "Defendant did not agree to compensate Plaintiff for its earthmoving work through the payment of a salary or wages, but rather, Defendant agreed to compensate Plaintiff by paying rental rates for [Plaintiff's] equipment on the Project"; and (4) "Defendant did not provide insurance, or obtain any licenses, for Plaintiff in connection with the Project." These findings are supported by substantial evidence in the record.

{34} Additionally, we have serious doubts regarding whether Plaintiff, as a corporation and not an individual, could serve as an employee under the contractor licensing statutes of Arizona and New Mexico. As mentioned above, Ariz.Rev.Stat. Ann. § 32–1121(A)(11) exempts "[a]ny *person* who engages in the activities regulated by this chapter ... as an employee with wages as the person's sole compensation." (Emphasis added.) Ariz.Rev.Stat. Ann. § 32–1101(A)(5) defines "Person" as "an applicant, an individual, a member of a limited liability company, a qualifying party, any partner of a partnership or limited liability partnership or any officer, director, qualifying party, trustee of a trust, beneficiary of a trust or owner of at least twenty-five per cent of the stock or beneficial interest of a corporation." This definition of "person" refers only to a singular human being who may serve in a variety of capacities. Thus, section 32–1121 does not appear to contemplate that an entire corporation—especially one that uses its own employees and equipment to perform contracting work—could serve in the capacity of an employee for the purposes of the exemption.

{35} Similarly, Section 60–13–3(D)(13) exempts "an *individual* who works only for wages" from the licensing requirement of the CILA. (Emphasis added.) Although the term "individual" is not defined in the CILA, Section 60–13–2(D) defines "person" as "an individual, firm, partnership, corporation, association or other organization, or any combination thereof." It is clear that Plaintiff, as a corporation, is a "person" as defined by the CILA. However, it seems less likely that Plaintiff could also be considered an "individual" under the statute. We find it significant that, in enumerating the exceptions to the licensing requirement in Section 60–13–3(D), our legislature chose to use the term "person" for some of the exemptions, and "individual" for others. *Compare* § 60–13–3(D)(1), (2), (11), (12), (15), (18) (using "person"), *with* § 60–13–3(D)(10), (13), (14) (using "individual"). This suggests that our legislature intended to use "person" as the more inclusive term and "individual" as the more restrictive term.

{36} Although we doubt that a corporation can serve as an employee under the contractor licensing statutes of Arizona and New Mexico, we need not decide the present case on that basis because the district court's conclusion that Plaintiff was not an employee—and therefore was required to have an Arizona contractor's license—is supported by substantial evidence.

**F. Substantial Compliance**

{37} Despite the strong policy in Arizona and New Mexico against allowing an unlicensed contractor to recover damages for work that requires a contractor's license, the courts of both states will allow recovery in certain, limited circumstances in which the contractor demonstrates substantial compliance with the licensing statute. "The doctrine of substantial compliance was adopted because we do not insist on literal compliance in a situation where the party seeking to escape his obligation has received the full protection contemplated by the statute." *Koehler*, 114 N.M. at 365, 838 P.2d at 982; *see also Aesthetic Prop. Maint.*, 900 P.2d at 1213–14 (following *Koehler* and concluding that substantial compliance can be adequate

under section 32–1153 to satisfy the policy of the statute).

{38} In the context of contractor licensing, the doctrine of substantial compliance includes the following elements: "(1) the contractor held a valid license at the time of contracting; (2) the contractor readily secured a renewal of that license; and (3) the responsibility and competence of the contractor's managing officer was officially confirmed throughout the period of performance." *Koehler,* 114 N.M. at 365, 838 P.2d at 982. However, a contractor need not meet all of these factors in order to demonstrate substantial compliance because "the true test is whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute." *Id.* (internal quotation marks and citation omitted); *Aesthetic Prop. Maint.,* 900 P.2d at 1213.

{39} Arizona and New Mexico courts have applied the substantial compliance doctrine only in narrow circumstances. In *Koehler,* our Supreme Court held that a licensed contractor whose license was cancelled through no fault of his own substantially complied with the licensing statute. 114 N.M. at 364, 838 P.2d at 981. The contractor's license was cancelled because he did not receive renewal notices from his bonding company due to problems with his mail delivery. *Id.* Once the contractor learned of the cancellation, he took immediate steps to renew his proof of financial responsibility and to get his license reinstated. *Id.* Although the contractor entered into a contract during the period in which his license was cancelled, the Court noted that the contractor did not willfully violate the CILA. *Id.* at 365, 838 P.2d at 982. Concluding that the purpose of the CILA was met throughout the relevant period of time, the Court held that the contractor substantially complied with the statute and could proceed with his suit to recover damages. *Id.* at 366, 838 P.2d at 983.

{40} The Supreme Court of Arizona faced a similar situation in *Aesthetic Property Maintenance, Inc.,* which involved a licensed contractor that relocated and did not receive its license renewal notice because the Arizona Registrar of Contractors sent the notice to the wrong address. 900 P.2d at 1211. Upon learning that its license had been sus-

pended, the contractor immediately sought and received reinstatement. *Id.* The contractor had maintained its insurance and license bond for the period during which its license had been suspended. *Id.* Following *Koehler* and similar cases, the court held that a contractor could overcome the bar from recovery under section 32–1153 if the contractor substantially complied with the statute. *Aesthetic Prop. Maint.,* 900 P.2d at 1214.

{41} The court discussed the factors relating to a claim of substantial compliance, in relevant part, as follows:

Because the statute is designed to protect the public, the public must in fact be protected while the license is under suspension. Was the contractor financially responsible while its license was suspended? A contractor does this by maintaining its liability insurance, surety bond, workers' compensation insurance, and any other requirement imposed by the Registrar [of Contractors]. Failing that, there can be no substantial compliance.

Did the contractor knowingly ignore the registration requirements? If so, this is fatal to a claim of substantial compliance. Did the contractor, immediately upon learning of the license suspension or other statutory noncompliance, apply to reactivate the license or remedy the statutory violation? This is a necessary condition to a finding of substantial compliance. Finally, did the failure to comply with our statute prejudice the party the statute seeks to protect?

*Id.* The court concluded, based on these factors, that the contractor in that case had satisfied the substantial compliance test. *Id.*

{42} However, the substantial compliance doctrine does not apply in Arizona where a contractor enters into a contract before initially becoming licensed—even if the contractor later becomes licensed while working on the contract. *Crowe,* 41 P.3d at 654. The contractor in *Crowe* took and passed Arizona's contractor's test, but began work on a project before receiving his license. *Id.* at 652. The contractor filed a complaint seeking payment for work he performed on the project after receiving his license, perhaps recognizing that he could not recover for work he performed before receiv-

ing the license. *Id.* The defendant filed a motion to dismiss on the ground that the contractor did not have a license when the parties entered into the contract. *Id.* The contractor responded that he had substantially complied with the licensing statute during the period of time in which he worked on the project with a license. *Id.*

{43} The Arizona Court of Appeals first noted that section 32–1153 requires a contractor attempting to recover damages to allege and prove that he or she "was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose." *Crowe,* 41 P.3d at 653 (internal quotation marks, citation and emphasis omitted). The court then applied the factors articulated in *Aesthetic Property Maintenance* for substantial compliance and stated that (1) there was no assertion that the Registrar of Contractors contributed to the contractor's lack of a license, (2) the contractor presented no evidence that he was financially responsible during the period in which he was unlicensed, (3) the contractor did not dispute that he was aware of Arizona's licensing requirements, and (4) the contractor did not act immediately to comply with the licensing statute. *Crowe,* 41 P.3d at 653–54. The court concluded that the contractor did not substantially comply with the statute and could not recover for the work performed on the contract. *Id.* at 654.

{44} The foregoing cases demonstrate that substantial compliance can be found where a contractor's license is suspended through no fault of his or her own while the contractor remains financially responsible and, once aware of the situation, acts immediately to remedy it. *See Crowe,* 41 P.3d at 654 ("[T]he basic premise of the substantial compliance test as outlined in *Aesthetic* is that the contractor was unlicensed through no fault of his own and immediately acted to rectify the problem."). We now turn to Plaintiff's argument that, even if we agree with the district court that Plaintiff was not an employee, Plaintiff should not be precluded from recovery because Plaintiff substantially complied with Arizona's licensing statute.

{45} Plaintiff claims that it substantially complied with Arizona's licensing statute because (1) Plaintiff was financially responsible;

(2) Plaintiff did not knowingly ignore the licensing statute, but instead entered into an agreement with the good faith belief that doing so would allow Plaintiff to work on the Project while complying with the law; (3) Plaintiff was not required to take immediate steps to become licensed because Plaintiff never claimed to be a contractor; and (4) Defendant was not prejudiced by Plaintiff's noncompliance with the statute.

{46} The facts of the present case do not fit within the narrow exception of the substantial compliance doctrine. Plaintiff's failure to comply with Arizona's licensing statute was not a result of someone else's error. To the contrary, Plaintiff willingly began contracting work without a license based on Plaintiff's erroneous belief that its status as an employee under the Contract would exempt Plaintiff from the licensing requirement. Even if we accept Plaintiff's position that it did not ignore the licensing statute with a malicious or devious intent, Plaintiff nonetheless *knowingly* ignored the statute which, under *Aesthetic Property Maintenance,* is fatal to Plaintiff's claim of substantial compliance. Moreover, Plaintiff entered into the contract without a license and never acted to remedy its noncompliance. These facts are also fatal to Plaintiff's substantial compliance claim under *Crowe.*

{47} The present case does not compel us to expand the substantial compliance doctrine beyond the circumstances presented in *Koehler* and *Aesthetic Property Maintenance.* To hold otherwise would encourage contractors to avoid licensing requirements by claiming ignorance of the law. Such a result would cause the exception to swallow the rule. We therefore conclude that Plaintiff did not substantially comply with Arizona's licensing statute.

**CONCLUSION**

{48} The district court's order dismissing Plaintiff's claims is affirmed.

{49} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.