Certiorari Denied, June 14, 2012, No. 33,613

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-070

Filing Date: April 4, 2012

Docket No. 30,699

MARGARET ANNE DION,

      Petitioner-Appellant,

v.

NANCY CIMARRON RIESER,
successor personal representative of
the Estate of Richard Davis Rieser,
deceased,

      Respondent-Appellee.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge

Pregenzer Baysinger Wideman & Sale, P.C.
Marcy Baysinger
Albuquerque, NM

for Appellant

Catron, Catron & Pottow, P.A.
Michael T. Pottow
Santa Fe, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}** An Australian court issued a judgment and order (the Australian judgment) which stated that, pursuant to Australia law, Margaret Anne Dion was the "de facto spouse" of

Decedent Richard Davis Rieser. Decedent owned property in New Mexico. Relying on the Australian judgment, Ms. Dion petitioned the district court in New Mexico, where a formal probate proceeding of Decedent's estate was pending, and requested that she be appointed the personal representative of Decedent's estate. The district court denied Ms. Dion's petition. Ms. Dion appeals.

**{2}** She argues that her de facto spousal relationship with Decedent under Australia law constituted a marital relationship. She points to the rule of comity, pursuant to which New Mexico recognizes marriages that are valid where they are contracted. Therefore, she contends that this Court should conclude that she is Decedent's surviving spouse and as such, she is entitled to priority for appointment as personal representative of his estate.

**{3}** We disagree with Ms. Dion's contention. We hold that the Australian judgment does not create a marriage recognizable under New Mexico law such that Ms. Dion can be considered a surviving spouse for purposes of New Mexico probate law. We affirm the district court's order denying Ms. Dion's petition.

## BACKGROUND

**{4}** Decedent died intestate in February 2007. He was unmarried, had no children, and owned property in Australia and in New Mexico. Ms. Dion had a relationship for many years with Decedent before his death. They lived together for periods of time in Australia, Indonesia, and Santa Fe, and they had financial interrelations.

**{5}** In May 2007, New Mexico Bank & Trust (the Bank) filed a petition in Santa Fe County, New Mexico district court, for a formal probate of Decedent's estate (the estate) and became the estate's first personal representative. In July 2007, Ms. Dion filed a petition to vacate the order entered by the court for formal probate, determination of heirship, and appointment of personal representative. She asserted that she was Decedent's spouse at the time of this death and Decedent's sole heir. At the same time, she filed an objection to the Bank's petition and appointment on the ground that she was Decedent's surviving spouse and had priority for appointment as the personal representative. The Bank resigned as personal representative in May 2008. After a hearing on Ms. Dion's petition to vacate and her objection, Decedent's sister, Nancy Cimarron Rieser, was appointed personal representative of the estate.

**{6}** Between July 2007 and May 2008, in January 2008, Ms. Dion petitioned the New South Wales, Australia, Supreme Court for letters of administration of Decedent's estate. In February 2010, after hearing evidence regarding Ms. Dion's claim in *Dion v. Rieser* [2010] NSWSC 50, the Australian court issued the Australian judgment. Based primarily on combinations of Australia laws titled the *Property (Relationships) Act 1984*, as amended in 1999 (the Property Act), the *Property (Relationships) Legislation Amendment Act 1999* (the Property Amendment Act), and the *Probate and Administration Act of 1898*, as amended in 1999 (the Probate Act), together with Australia case law, the Australian court

2

declared that Ms. Dion was the "de facto spouse" of Decedent at the time of his death and declared further that she was entitled to the real and personal property of the estate.[1] *See generally Property (Relationships) Act 1984* (Cth) (Austl.), http://www.austlii.edu.au/au/legis/nsw/_consol_act/pa1984298/; *Property (Relationships) Legislation Amendment Act 1999* (Cth) (Austl.), http://www.legislation.nsw.gov.au/sessionalview/sessional/act/1999-4.pdf; *Probate and Administration Act of 1898* (Cth) (Austl.), http://www.legislation.nsw.gov.au/fullhtml/inforce/act+13+1898+cd+O+N.

**{7}** Following the Australian judgment, in March 2010, Ms. Dion filed another petition in the pending New Mexico probate proceeding, asking that she be appointed personal representative by virtue of her de facto spouse status under Australian law granted by the Australian court in *Dion v. Rieser* and based on the doctrine of collateral estoppel, as well as on New Mexico law and the rule of comity. After briefing and argument, the district court entered an order in July 2010 denying Ms. Dion's petition. In its order denying Ms. Dion's petition, the New Mexico district court set out the following findings of fact.

1.      New Mexico recognizes common[-]law marriages if they are valid in the jurisdiction where the relationship arose and was consummated.

2.      Comity should apply to recognize common[-]law marriages from jurisdictions where such relationships are valid.

3.      A de facto relationship pursuant to the law of New South Wales in Australia is not equivalent to marriage in Australia.

4.      A de facto relationship in Australia is a creature of property law as opposed to domestic relations law.

5.      The relationship between [Ms.] Dion and the Decedent was not equivalent to a common law marriage as it has been recognized by courts in New Mexico.

6.      The relationship between [Ms.] Dion and the Decedent is not a common[-]law marriage that should be recognized by this [c]ourt.

7.      The relationship between [Ms.] Dion and the Decedent demonstrated a lack of intent to form a marriage relationship and there was a lack of intent by these individuals to hold themselves out exclusively as husband and wife in an exclusive marriage relationship.

---

[1] Any conflict that may exist between the Australian judgment and the New Mexico formal probate case as to intestate inheritance is not before this Court.

**{8}**     Ms. Dion appeals from the order denying her petition.  She argues on appeal that, as the surviving spouse of Decedent by virtue of the Australian judgment, the district court erred in denying her petition to be appointed personal representative of the estate.

**DISCUSSION**

**{9}**     To the extent we are required to engage in statutory construction, our review is de novo.  *Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149 N.M. 215, 247 P.3d 736.  To the extent the issue at hand involves the application of law to fact, our review is de novo. *Gomez v. Chavarria*, 2009-NMCA-035, ¶ 6, 146 N.M. 46, 206 P.3d 157.  To the extent a determination turns on facts found by the district court, we review the findings to see if they are supported by substantial evidence.  *See Ellen Equip. Corp. v. C.V. Consultants & Assocs., Inc.*, 2008-NMCA-057, ¶ 8, 144 N.M. 55, 183 P.3d 940.  Before addressing the issue before this Court, we begin with the basic arguments of the parties, after which we discuss the New Mexico and Australia laws applicable to the issue before us.

**Basic Arguments of the Parties**

**{10}**     Ms. Dion begins her argument with the following reasoning.  Under NMSA 1978, Section 45-3-203(A) (1975) (amended 2009 and 2011), a surviving spouse has priority for appointment as the personal representative of a decedent's estate.  The Australian judgment establishes that Ms. Dion was the surviving spouse of Decedent at the time of his death.  NMSA 1978, Section 40-1-4 (1915) recognizes lawful marital relationships formed outside the State of New Mexico.  Therefore, Ms. Dion is entitled to be appointed personal representative of the estate.

**{11}**     The Australian judgment was placed in evidence.  Ms. Dion backs up the validity and soundness of the Australian judgment with the circumstances that the Australian court took testimony over a three-day period from thirteen witnesses, including the testimony of Ms. Rieser, the court considered the evidence of the relationship between Ms. Dion and Decedent from 1981 until Decedent's death in 2007, the court properly applied the criteria for establishment of a de facto spousal relationship as set out in the applicable Australia law, and the Australian judgment was "remarkable for its thoroughness and careful consideration of the facts of the case."  Ms. Dion asserts that, based on the Australian judgment and through application of the rule of comity, New Mexico must recognize her de facto spouse status as a marital relationship and accord it "recognition on a par, at least, with a common[-]law marriage."

**{12}**     Ms. Rieser does not attack the Australian court's determination that a de facto relationship existed as between Ms. Dion and Decedent under Australia law at the time of Decedent's death, nor does she attack any of the facts discussed in the Australian judgment. Ms. Rieser responds that the de facto relationship of Ms. Dion and Decedent was neither a legal marriage based on either Australia or New Mexico statutory requirements, nor a common-law marriage that can be recognized under New Mexico law.  The heart of the issue

4

as Ms. Rieser sees it is "the nature of a de facto relationship and the distinction between that relationship and marriage." Ms. Rieser engages in a detailed analysis of Australia law, set against New Mexico law, to justify her positions. We turn to the applicable New Mexico and Australia laws.

**Personal Representative Priority Under New Mexico Law**

**{13}**    Section 45-3-203(A) in the New Mexico Uniform Probate Code sets out the priority among persons seeking appointment as personal representative. Ms. Dion seeks priority under Subsection (A)(4) as Decedent's "surviving spouse[.]"

**Marriage Under New Mexico Law**

**{14}**    In New Mexico, "[m]arriage is contemplated by the law as a civil contract, for which the consent of the contracting parties, capable in law of contracting, is essential." NMSA 1978, § 40-1-1 (1915). The law contemplates that a marriage contract will be solemnized. NMSA 1978, § 40-1-2 (2001); *Merrill v. Davis*, 100 N.M. 552, 553, 673 P.2d 1285, 1286 (1983) (stating that "[f]or a marriage to be valid, it must be formally entered into by contract and solemnized before an appropriate official").

**{15}**    Additionally, New Mexico recognizes as valid "[a]ll marriages celebrated beyond the limits of this state, which are valid according to the laws of the country wherein they were celebrated or contracted[.]" Section 40-1-4; *Gallegos v. Wilkerson*, 79 N.M. 549, 553, 445 P.2d 970, 974 (1968) (same, based on the predecessor to Section 40-1-4). Thus, although New Mexico does not authorize or acknowledge a New Mexico based common-law marriage, *Merrill*, 100 N.M. at 553, 673 P.2d at 1286, it does recognize a common-law marriage "if valid in the jurisdiction where consummated." *In re Estate of Lamb*, 99 N.M. 157, 158-59, 655 P.2d 1001, 1002-03 (1982); *Gallegos*, 79 N.M. at 551, 445 P.2d at 972; *In re Estate of Bivians*, 98 N.M. 722, 726, 652 P.2d 744, 748 (Ct. App. 1982). Such marriages "have the same force as if they had been celebrated in accordance with the laws in force in this state." Section 40-1-4. The surviving spouse in a common-law marriage can serve as the personal representative in a New Mexico probate proceeding. *See Gallegos*, 79 N.M. at 550, 553, 445 P.2d at 971, 974 (holding that the decedent's common-law marriage widow was the decedent's surviving spouse).

**{16}**    "An interest in comity underlies Section 40-1-4 and the rule it codifies." *Leszinske v. Poole*, 110 N.M. 663, 668, 798 P.2d 1049, 1054 (Ct. App. 1990). "'Comity[]' . . . is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).

> Under the doctrine of comity, state courts recognize foreign judgments where the proceedings on which the judgment is based are not contrary to the public policy of the forum, where the judgment sought to be recognized was rendered under circumstances wherein the foreign court had

5

jurisdiction over the subject matter and the parties, and where the parties were given an opportunity for a full and fair hearing on the issues.

*Watson v. Blakely*, 106 N.M. 687, 690, 748 P.2d 984, 987 (Ct. App. 1987), *overruled on other grounds by Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992).

**{17}** "As a general rule, comity should be extended. Only if doing so would undermine New Mexico's own public policy will comity not be extended." *Fowler Bros., Inc. v. Bounds*, 2008-NMCA-091, ¶ 23, 144 N.M. 510, 188 P.3d 1261 (internal quotation marks and citation omitted)). The rule of comity applies even if the marriage cannot be contracted in New Mexico. *See, e.g.*, *Leszinske*, 110 N.M. at 670, 798 P.2d at 1056 (recognizing a valid Costa Rican marriage between an uncle and a niece, notwithstanding New Mexico's public policy against incest). *But see id.* at 669, 798 P.2d at 1055 (stating that the purposes served by comity may be outweighed if the marriage "offends a sufficiently strong [New Mexico] public policy").

**{18}** Because "the law of the place of contract governs the validity of a marriage" under the rule of comity in New Mexico, *In re Bivians*, 98 N.M. at 726, 652 P.2d at 748, "[t]o determine whether a valid common[-]law marriage was formed in a foreign jurisdiction, it is . . . necessary to look to the substantive law of that jurisdiction." *In re Lamb*, 99 N.M. at 159, 655 P.2d at 1003; *see also In re Bivians*, 98 N.M. at 729, 652 P.2d at 751 (stating that Texas law determined the requisites of the asserted common-law marriage "inasmuch as the law of the place of the alleged marriage contract governs the validity of the marriage").

**Detail of Australia Law**

**{19}** The Australian judgment sets out various laws pertaining to de facto spousal relationships. The judgment quotes Section 61B(2) of the Probate Act, which states, "'If the intestate leaves a spouse but no issue, the estate shall be held in trust for the spouse absolutely.'" The judgment notes that Section 32G of the Probate Act "makes the reference to the spouse of the intestate in [Section] 61B(2) [to] include a de facto spouse[.]" The judgment also quotes Section 32G of the Probate Act as follows.

Interpretation

(1)     In this Part:

de facto relationship has the same meaning as in the Property (Relationships) Act 1984.

de facto spouse, in relation to a person dying wholly or partly intestate, means someone who:

(a)     was the sole partner in a de facto relationship with the person, and

(b)     was not a partner in any other de facto relationship.

(2)     Except where the contrary intention appears, a reference in this Part to the spouse of an intestate includes a reference to a person who, at the time of death of the intestate, was the de facto spouse of the intestate.

*Probate and Administration Act 1898*, *supra*, s 32G.  Turning to Section 4 of the Property Act, as amended, the judgment quotes the definition of "de facto relationships" for the purposes of the Property Act as "a relationship between two adult persons:  (a) who live together as a couple, and (b) who are not married to one another or related by family." (Internal quotation marks omitted.)  *Property (Relationships) Act 1984*, *supra*, s 4(1).  The judgment then sets out the factors to be considered in determining whether a de facto relationship exists.

In determining whether two persons are in a de facto relationship, all the circumstances of the relationship are to be taken into account, including such of the following matters as may be relevant in a particular case:

(a)     the duration of the relationship,

(b)     the nature and extent of common residence,

(c)     whether or not a sexual relationship exists,

(d)     the degree of financial dependence or interdependence, and any arrangements for financial support, between the parties,

(e)     the ownership, use[,] and acquisition of property,

(f)     the degree of mutual commitment to a shared life,

(g)     the care and support of children,

(h)     the performance of household duties,

(i)     the reputation and public aspects of the relationship.

*Id.* s 4(2).  The judgment notes that amendments to the Probate Act "conferred rights on de facto spouses, including rights in intestate succession" and further notes that "[t]he amendments in 1999 restated the definition of 'de facto relationship' but did not make the definition any narrower."  The Australian judgment concluded that "the present definition

7

should be applied when deciding whether a de facto relationship existed before 1999." The Australian court determined that "[a] de facto relationship is a continuing course of conduct and [behavior], not an event at a fixed point of time" and that "[o]nce a de facto relationship exists[,] its termination is not readily assumed." The court further determined that "[t]he [s]tate law confers the same succession rights on de facto spouses as it confers on spouses in marriages[, however t]he [s]tate law does not create a marriage. It would be beyond the legislative power of the [s]tate to do so, as the power to make laws with respect to marriage is conferred by the Constitution . . . on the Commonwealth Parliament[.]"

**{20}** Australia laws cited by Ms. Rieser include Section 62 of the Property Amendment Act, which states:

> Nothing in the *Property (Relationships) Legislation Amendment Act 1999* is to be taken to approve, endorse or initiate any change in the marriage relationship, which by law must be between persons of the opposite sex, nor entitle any person to seek to adopt a child unless otherwise entitled to by law.

Along that line, Ms. Rieser asserts that Australia's *Marriage Act 1961*, Section 5, defines marriage as "the union of a man and a woman to the exclusion of all others, voluntarily entered into for life." *Marriage Act 1961* (Cth) s 5 (Austl.), http://www.austlii.edu.au/au/legis/cth/consol_act/ma1961185/. This Act requires that a marriage be solemnized by an authorized celebrant in the presence of two witnesses and that notice in writing of the intended marriage, signed by both husband and wife, be given to the celebrant at least one month before marriage. *Id.* ss 41, 42, 44.

**{21}** Also related and relied upon by Ms. Rieser is Australia's *Family Law Act 1975*, Section 4AA, that defines a de facto relationship much the same way as does Section 4 of the Property Act. *Family Law Act 1975* (Cth) s 4AA (Austl.), http://www.austlii.edu.au/au/legis/cth/consol_act/fla1975114/. Section 4AA(5) of the *Family Law Act 1975* states that a de facto relationship can exist (a) between two persons of different sexes and between two persons of the same sex; and (b) even if one of the persons is legally married to someone else or in another de facto relationship.

**Summary of the Australian Judgment**

**{22}** The Australian judgment is a considerable piece of work that runs forty-eight pages with 167 numbered paragraphs. It sets out in detail the Australia statutory and case law on which it relies. It spends thirty-nine pages describing in detail Decedent's and Ms. Dion's histories and long relationship, and it discusses Decedent's assets. The court had no question that the over twenty-year relationship came within the definitional requirements in Section 4(2) of the Property Act, based, among other things, on Ms. Dion and Decedent living and co-habitating and extensively traveling together, on being emotionally involved together in a loving relationship with close concern for each other's welfare and projects, on Ms. Dion being "deeply involved in [Decedent's] economic life" and each being involved in each

8

other's business and economic affairs, and on their open and public relationship with relatives and friends. The judgment concludes:

> While [recognizing] how unlike the present case is to any other which I have encountered, my determination is that at the time of [Decedent's] death[,] their relationship was a de facto relationship as defined in [Section] 4 of the *Property (Relationships) Act* 1984. When [Decedent] died[,] he and Ms[.] Dion were each sole partner[s] in a de facto relationship with the other in that though they were not married to one another or related by family[,] they lived together as a couple. Ms[.] Dion was his de facto spouse within the provisions of [Section] 32G of the *Probate and Administration Act*. Neither was a partner in any other de facto relationship. [Decedent] left no issue. His estate, or so much of it as passes under the law of succession of New South Wales, is held in trust for Ms[.] Dion absolutely. I will make a declaratory order to this effect. With this declaration, it is clear that her application for Letters of Administration in Common Form should be granted. I will refer her application to the Registrar of Probates to complete.

And the judgment contains the following order:

> Declare that [Ms.] Dion was the de facto spouse of [Decedent] the intestate at the time of his death and is entitled to the real and personal estate of the intestate in accordance with Section 61B(1) and (2) of the *Probate and Administration Act* 1898.

**Analysis of Whether the De Facto Spouse Status in Australia Can Give Ms. Dion a Status of "Surviving Spouse" Under New Mexico Law**

**{23}** Ms. Rieser asserts that the de facto relationship was not a marriage under Australia law. The Australian court concluded as much, Ms. Dion conceded as much in oral argument before this Court, and we agree. The de facto spouse status does not fit within Australia's *Marriage Act 1961* and the *Family Law Act 1975*, and it indicates that the two are distinct. *See Family Law Act 1975*, *supra*, s 4AA(5)(b) (stating that "a de facto relationship can exist even if one of the persons is legally married to someone"). Ms. Rieser also asserts that the de facto relationship cannot be considered a marriage under New Mexico's law of marriage as set out in Sections 40-1-1 and 40-1-2 of the New Mexico statutes. Ms. Dion conceded as much in oral argument, and we agree. Ms. Dion also conceded that the de facto relationship is not a common-law marriage. We agree.

**{24}** Ms. Dion argued at oral argument that her Australian de facto spousal relationship, established by the Australian judgment, must be recognized as a marital relationship based on application of New Mexico's rule of comity and because there exists no basis in New Mexico law to deny comity recognition on public policy grounds. *See Merrill*, 100 N.M. at 553-54, 673 P.2d at 1286-87. She supplements this argument with the further argument that

9

the de facto relationship should be recognized in New Mexico as a valid marital relationship that "rises at least to the level of a common-law marriage," that "has all of the indicia of a common[-]law marriage," and that was sufficiently "on a par . . . with a common[-]law marriage" to preclude denial of its recognition in New Mexico.

**{25}** Ms. Dion argues that the Australian court properly looked at the totality of circumstances of the relationship, and just as common-law marriage is often inferred from circumstantial evidence, a relationship determined by the Australian court to exist consisted of circumstantial evidence reflecting a marital relationship, "including the intent of the parties to be in a marital relationship." Ms. Dion shows that her de facto spousal relationship with Decedent was, in fact, an exclusive relationship, citing the Australian judgment's findings and the Property Amendment Act's definition of de facto spouse "in relation to a person dying wholly or partly intestate" as "mean[ing] someone who: (a) was the sole partner in a de facto relationship with the person, and (b) was not a partner in any other de facto relationship." *Probate and Administration Act 1898*, *supra*, s 32G. In addition, she argues that the public aspect of the relationship was satisfied by the Australian court's findings that Decedent applied for an Australian permanent residence visa in 1997 in which he "stated . . . that his marital status was 'de facto/common law' and that the relationship began about 1986[,]" and that Decedent "named Ms[.] Dion as his spouse."

**{26}** We reject Ms. Dion's assertion that the de facto relationship is a marital relationship. The Australian court explicitly determined that the relationship between Ms. Dion and Decedent was not a marriage. Whatever similarities exist between the analysis undertaken by the Australian court and the factors used by various United States jurisdictions to determine whether a relationship amounts to a common-law marriage are not pertinent to our analysis. The rule of comity does not require this Court to determine whether the facts before the Australian court, if measured against the laws of another jurisdiction, would have led to a conclusion that a common-law marriage existed between Ms. Dion and Decedent. Rather, comity requires us to recognize common-law marriages "if valid in the jurisdiction where consummated." *See In re Lamb*, 99 N.M. at 159, 655 P.2d at 1003. And comity requires us to "recognize foreign judgments where the proceedings on which the judgment is based are not contrary to public policy of the forum[.]" *Watson*, 106 N.M. at 690, 748 P.2d at 987. Here, where it is undisputed that Ms. Dion and Decedent were not married, we see no basis in comity to conclude that they were. While there might be contexts apart from the present surviving spouse/marriage issue under which the Australian judgment would be recognized and thus applicable in New Mexico for some purpose, here, we elude comity analysis. We need only to look at whether the de facto relationship established in the Australian judgment is a relationship New Mexico will recognize as a marriage under Section 40-1-4.

**{27}** We note that throughout its judgment, the Australian court used the terms "de facto spouse" and "de facto relationship" interchangeably. Ms. Dion adheres to the characterization of the relationship as "de facto spouse" or "de facto spousal" to support her position that she is Decedent's surviving spouse. We are unpersuaded.

**{28}** We do not read "spouse" in the Property Act to mean "spouse" in a marriage. Our Supreme Court has noted a difference between legal relationships between domestic partners and those between "spouses." *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 11, 140 N.M. 16, 139 P.3d 176 (noting that passage of proposed legislation that "would have created a legal relationship between domestic partners that would have been equal to the legal relationship between spouses" had been rejected by the New Mexico Legislature). In regard to insurance policy language, the Court in *Cline* stated, "[w]e believe this is the significant difference between spouses and domestic partners as 'family members[.]'" *Id.* ¶ 12. And the Court discussed the failed attempts in the Legislature "to pass legislation intended to extend the rights, protections[,] and benefits enjoyed by *spouses in a marriage* to domestic partners[.]" *Id.* ¶ 10 (emphasis added). In this case, it is undisputed that Ms. Dion and Decedent were in a legally cognizable "de facto" relationship. Nevertheless, the nature of that relationship was not marital under New Mexico law.

**{29}** In sum, we are not persuaded by argument or authority, for the purposes of determining whether Ms. Dion is a surviving spouse under Section 45-3-203, that we should expand the concept of marriage beyond language in Sections 40-1-1 and 40-1-2, or beyond the language in Section 40-1-4 as it has been interpreted in New Mexico cases addressing a foreign common-law marriage.

**CONCLUSION**

**{30}** We affirm the district court.

**{31} IT IS SO ORDERED.**

---

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

---

**JAMES J. WECHSLER, Judge**

---

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Dion v. Rieser*, Docket No. 30,699**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Collateral Estoppel

**DOMESTIC RELATIONS**
Common Law Marriage
Foreign Decrees

**INTERNATIONAL LAW**
Domestic Effect of Foreign Law

**STATUTES**
Interpretation

**WILLS, TRUSTS AND PROBATE**
Choice of Law
Heir
Next of Kin
Personal Representative
Probate Law, General